UNITED STATES DISTRICT COURT                    **(ECF)**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
KENDALL JONES,                        : 12 Civ. 4815 (JPO) (JCF)
                                      :
            Plaintiff,                :        REPORT AND
                                      :        RECOMMENDATION
      - against -                     :
                                      :
COMMISSIONER OF SOCIAL SECURITY,      :
                                      :
            Defendant.                :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE J. PAUL OETKEN, U.S.D.J.:

    The plaintiff, Kendall Jones, brings this action pursuant to section 405(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of a determination of the Commissioner of the Social Security Administration (the "Commissioner").  That determination affirmed a decision by an Administrative Law Judge ("ALJ"), which found that the plaintiff was disabled as of October 1, 2011, but was not disabled or entitled to disability insurance benefits or Supplemental Security Income ("SSI") during the nine-month period from January 6, 2011, through September 30, 2011. Each party has submitted a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

    Mr. Jones seeks disability and SSI benefits on the grounds that he suffers from diabetes, high blood pressure, a left shoulder tear, depression, and sleep apnea.  He contends that the ALJ erred in determining that there were jobs in the national economy that he

could have performed before October 1, 2011.  He argues that (1) the ALJ failed to credit the report of his treating psychiatrist, and (2) the ALJ's determination of his residual functional capacity was not supported by substantial evidence.  For the reasons that follow, I recommend that the Commissioner's decision be vacated and the case be remanded for further proceedings.

<u>Background</u>

     A.   <u>Personal Background</u>

Mr. Jones was born on March 21, 1957, and attended school through the tenth grade.  (R. at 29, 50, 188).[1]  He worked for twenty years for the Board of Education as a school aide, which involved office work and child care.  (R. at 34, 52-57, 200).  The job did not require significant lifting.  (R. at 200).  He was most recently employed in 2008, making wreaths and ornaments for a Christmas company.  (R. at 31, 59).  He is no longer gainfully employed and lives with his 15-year-old son.  (R. at 29-30).

Mr. Jones suffers from both physical and psychiatric impairments.  He has a left shoulder tear and suffers from diabetes, high blood pressure, depression, and sleep apnea.  (R. at 223, 259-60, 383).  The combination of these impairments forms the basis for his claim that he became disabled as of January 6, 2011.

---

[1] "R." refers to the administrative record filed with the Commissioner's Answer.

B.   History of Physical and Mental Impairments

　　　1.   Medical Evidence Before January 6, 2011

On August 25, 2010, Mr. Jones was evaluated by Dr. Padmavathi Jagarlamudi for FEGS WeCARE.[2]   (R. at 240-43).   During the evaluation, Mr. Jones reported left shoulder pain with decreased range of motion,[3] knee pain with decreased range of motion, and left ankle pain. (R. at 241). He also reported depressed mood and affect with suicidal ideation. (R. at 241). Dr. Jagarlamudi concluded that the plaintiff could walk, climb, and reach between one and three hours at a time and lift 20 pounds as often as 10 times per hour. (R. at 242).

On September 24, 2010, the plaintiff was evaluated by Dr. Quasem Chowdhury at Doctors Medical Group. (R. at 301). Mr. Jones reported pain in the left shoulder and hip, which increased with any physical activity. (R. at 301). Manual muscle testing could not be done on the left shoulder due to pain, but resulted in a score of 5 of on a scale of 1 to 5, with 5 being normal, in other

_____

[2] FEGS WeCARE is funded by the New York City Human Resources Administration and assists individuals obtain employment or apply for SSI benefits.
(http://www.fegs.org/services/welfare_to_work/wecare (last visited April 23, 2013)).   Anita Colon, of FEGS, represented Mr. Jones in applying for SSI benefits (R. at 180-87).

[3]   A Magnetic Resonance Imaging ("MRI") on Mr. Jones' left shoulder on July 7, 2010, revealed an intrasubstance tear to the supraspinatous muscle and a torn anterior glenoid labrum. (R. at 223).

areas tested. (R. at 301). Mental status examination revealed no abnormality. (R. at 301).

On December 6, 2010, Mr. Jones was examined by Dr. Sharon Revan. (R. at 235-239). During the examination, the plaintiff walked with a limp on the right and could walk on his toes but stated he could not walk on his heels. (R. at 236). He had limited range of motion in the cervical spine and left shoulder. (R. at 237). Mr. Jones reported that he could do some cooking, cleaning, laundry, and shopping. (R. at 236). Dr. Revan concluded that the plaintiff had no limitation in speech, vision, or hearing; mild limitations in the upper extremities for gross motor activity; mild limitations for climbing stairs due to shortness of breath and for activities of daily living due to shoulder pain; and limitations for walking due to knee pain. (R. at 238).

On the same day, Dr. Herb Meadow conducted a psychiatric consultative evaluation of the plaintiff. (R. at 231-234). Dr. Meadow found Mr. Jones to have depressed mood but no other abnormalities. (R. at 232). The plaintiff's attention, concentration, and memory were intact, and he was cooperative, with adequate manner of relating. (R. at 232). Dr. Meadow concluded that the plaintiff could perform all tasks necessary for vocational functioning. (R. at 233).

        2.   Medical Evidence During Relevant Period -- January
             6, 2011 to September 30, 2011

             i.   Dr. Francisco Rodriquez

     Dr. Francisco Rodriquez, a psychiatrist at CommuniLife Mental
Clinic, treated the plaintiff from February 1, 2011, to August 4,
2011.   (R. at 255-273, 481-498, 501-527).   At the initial
psychiatric evaluation, Mr. Jones reported being depressed, angry,
and fearful of going outside; he also stated that he sometimes
heard voices talking about death. (R. at 255, 257).   Nevertheless,
his speech was clear, coherent, and goal-directed, and his thought
process was normal.  (R. at 257).   He was also fully oriented but
had poor concentration and reported problems with recent and remote
memory.  (R. at 257-258).   A mental status examination on February
11, 2011, revealed normal psychomotor activity.  (R. at 256).   Dr.
Rodrgriuez diagnosed the plaintiff with "[m]ajor [d]epressive
disorder, [r]ecurrent, [s]evere with [p]sychotic features." (R. at
259).   He also found the plaintiff to have a Global Assessment of
Functioning ("GAF") score of 50.[4]  (R. at 260).   In a "Treating
Physician's Wellness Plan Report" for the New York City Department

_____

     [4] GAF is a scale from 0 to 100 that may be used to report the
clinician's judgment of an individual's overall symptom severity
and level of his functioning.   A GAF of 41 to 50 indicates serious
symptoms or any serious impairment in social, occupational, or
school functioning.   Diagnostic and Statistical Manual of Mental
Disorders -- Text Revision, 34 (4th Ed. Rev. 2000).

                              5

of Social Services dated February 24, 2011, Dr. Rodriguez indicated that the plaintiff was temporarily unemployable for six to nine months. (R. at 423). He updated this conclusion on May 19, 2011, indicating that the plaintiff was "[u]nable to work for at least 12 months (may be eligible for long term disability benefits.)" (R. at 426).

On August 2, 2011, the plaintiff reported improvements in his condition to Dr. Rodriguez. (R. at 377). Mr. Jones stated he was feeling better, sleeping more soundly, and was less depressed and more positive. (R. at 377). Dr. Rodriguez noted that the plaintiff was calm and cooperative during the examination and alert, oriented, coherent, and goal-directed. (R. at 377).

### ii. Dr. Barbara Akresh

Dr. Barbara Akresh performed an internal medicine examination on August 17, 2011. (R. at 379-83). The plaintiff had a normal gait, but could not walk on his heels or toes and could only squat one quarter of the way. (R. at 382). Dr. Akresh noted a perioperative myocardial injury in the left fifth intercostal space at the midclavicular line. (R. at 381). The plaintiff's cervical spine had full range of motion. (R. at 381). Left shoulder range of motion was diminished, and the plaintiff complained of pain in the trapezius muscle. (R. at 381). He had full range of motion in the hips, knees, and ankle bilaterally, and full strength in the

upper and lower extremities.  (R. at 381).  Neurologic examination revealed no abnormalities.  (R. at 381).  Hand and finger dexterity were intact, and the plaintiff had full grip strength.  (R. at 381).

Dr. Akresh concluded that the plaintiff had moderate limitations for any strenuous activities due to diabetes, hypertension, and a history of heart murmur.  (R. at 383).  Dr. Akresh also noted moderate limitations in the plaintiff's ability to lift and carry heavy objects due to chronic low back pain and history of cervical spine disease.  (R. at 383).  Dr. Akresh cautioned that more information should be obtained from any MRIs or X-rays that had been done.  (R. at 383).

### iii. Dr. Herb Meadow

Dr. Meadow performed a second psychiatric consultative examination on August 17, 2011.  (R. at 384-87).  Mental status examination revealed depressed mood but no other abnormalities. (R. at 385-86).  The plaintiff was cooperative, with adequate manner of relating.  (R. at 385).  His speech was fluent and clear, and expressive and receptive language skills were adequate.  (R. at 385).  His thought processes were coherent and goal-directed, with no evidence of hallucinations, delusions, or paranoia.  (R. at 385).  His attention and concentration were intact for counting and calculations; recent and remote memory skills were also intact.

(R. at 385).  The plaintiff's cognitive functioning was average, and his insight and judgment were fair.  (R. at 385-86).

Dr. Meadow diagnosed the plaintiff with depressive disorder, panic disorder without agoraphobia, and post-traumatic stress disorder.  (R. at 386).  He concluded that the plaintiff "would be able to perform all tasks necessary for vocational functioning." (R. at 386).

### iv.  Dr. T. Inman-Dundon

Dr. T. Inman-Dundon, a state agency psychologist,[5] reviewed the medical evidence on September 6, 2011, and assessed the plaintiff's mental residual functional capacity.  (R. at 388-405). He concluded that the plaintiff had medically determinable impairments of major depressive disorder, post-traumatic stress disorder, and panic disorder without agoraphobia.  (R. at 391, 393).  He also concluded that the plaintiff had mild restriction of activities of daily living, moderate difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence, and pace, and no repeated episodes of deterioration.  (R. at 398).

Specifically, Dr. Inman-Dundon concluded that the plaintiff was moderately limited in his ability to (1) work in coordination

---

[5] The record does not revel the specific agency with which Dr. Inman-Dundon was affiliated.

with or proximity to others without being distracted by them; (2) complete a normal workday and workweek without interruptions from psychologically based symptoms; (3) perform at a consistent pace without an unreasonable number and length of rest periods; (4) interact appropriately with the general public; (5) accept instructions and respond appropriately to criticism from supervisors; (6) get along with coworkers or peers; (7) use public transportation; and (8) set realistic goals or make plans independently of others (R. at 402-03). Dr. Inman-Dundon also concluded that the plaintiff was not significantly limited in his ability to (1) remember locations and work-like procedures; (2) understand, remember, and carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) maintain regular attendance, and be punctual within customary tolerances; (5) sustain an ordinary routine without special supervision; (6) make simple work-related decisions; (7) ask simple questions or request assistance; (8) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; (9) respond appropriately to changes in the work setting and (10) be aware of normal hazards and take appropriate precautions (R. at 402-403). Overall, Dr. Inman-Dundon concluded that the plaintiff could perform simple to semi-skilled work in a low contact setting. (R. at 404).

3.   <u>Medical Evidence On and After October 1, 2011</u>

Dr. Salman Haq of Doctors Medical Group examined the plaintiff on October 1, 2011, and concluded that the plaintiff had low to intermediate risk factors for low risk arthroscopic shoulder surgery.  (R. at 460).  Dr. Haq noted non-specific abnormal Electrocardiogram ("EKG") readings and diagnosed unspecified essential hypertension.  (R. at 460).

Dr. Luis Gonzalez, who had been treating Mr. Jones for one year, completed a psychiatric assessment on February 9, 2012.  (R. at 535-39).  He found the plaintiff to have a GAF of 50.  (R. at 536).  Dr. Gonzalez stated that Mr. Jones had fair ability to (1) deal with the public; (2) understand, remember, and carry out simple job instructions; and (3) relate predictably in social situations.  (R. at 537-38).  He concluded that the plaintiff had a good ability to maintain personal appearance but had poor or no ability to function in the remaining work-related areas, such as following work rules, relating to co-workers, or using judgment. (R. at 537-38).

D.   <u>Procedural History</u>

On June 10, 2011, Mr. Jones filed an application for disability insurance benefits and SSI benefits, alleging that he has been disabled since January 6, 2011.  (R. at 129-54).  The application was denied on September 13, 2011 (R. at 77-81), and the

plaintiff requested a hearing before an ALJ (R. at 89-93).  The hearing was held before ALJ Patrick Kilgannon on January 18, 2012. (R. at 25-71).

      1.   <u>Testimony at the Hearing</u>

      i.  <u>Mr. Jones</u>

Mr. Jones testified at the hearing that his girlfriend helps him with cooking, cleaning, going to appointments, and shopping. (R. at 41-42).  He stated that his blood sugar level is frequently over 300, and he has numbness in his fingers, arms, and legs.  (R. at 43-44).  Mr. Jones further testified that, to alleviate pain, he takes Percocet, Oxycodone, and Motrin, which cause drowsiness, and he sometimes falls asleep while out in public due to sleep apnea. (R. 44-45).  He noted that he has weekly psychotherapy and takes medication for depression, both of which help a little.  (R. at 40).  Mr. Jones said he uses a cane for stability and a back brace for pain, which were prescribed by Mr. Alabi, a physician's assistant at the Doctors Medical Group.  (R. at 46-47).

      ii. <u>Vocational Expert</u>

Vocational expert Karen Simone testified at the hearing regarding Mr. Jones' residual functional capacity.  The ALJ asked Ms. Simone to consider a hypothetical individual who could lift up to twenty pounds occasionally and ten pounds frequently, stand or walk for about six hours in an eight-hour workday, sit for six

11

hours in an eight-hour work day, and had unlimited use of the right arm and could use the left arm frequently for pushing and pulling, or reaching.   (R. at 59-60).   In addition, the hypothetical individual (1) could not climb ladders, ropes, or scaffolds, (2) could occasionally climb ramps and stairs, and could occasionally balance, stoop, kneel, crouch, and crawl, and (3) had no visual communicative, environmental, or manipulative limitations. (R. at 60).  The ALJ also added that the hypothetical individual would be limited to (1) low-stress job, meaning only occasional decision-making and changes in work setting, (2) simple and repetitive tasks, and (3) only occasional interaction with co-workers and the public.  (R. at 61-63).

Ms. Simone testified that such a person could not do the plaintiff's past relevant work, but could perform the jobs of mail clerk or housekeeper, each of which was light, unskilled work.  (R. at 62-64).  According to Ms. Simone, such jobs were available in the national economy.  (R. at 64).

### 2.   Commissioner's Decision

On February 23, 2012, the ALJ issued a decision finding the plaintiff disabled as of October 1, 2011, but not earlier. (R. at 9-17).  On May 9, 2012, the Appeals Council denied the plaintiff's request for review, rendering the ALJ's determination the final decision of the Commissioner.  (R. at 1-3).

Discussion

    A.   Standard of Review

A federal court reviewing the Commissioner's decision "may set aside a decision of the Commissioner if it is based on legal error or if it is not supported by substantial evidence." Hahn v. Astrue, No. 08 Civ. 4261, 2009 WL 1490775, at *6 (S.D.N.Y. May 27, 2009) (internal quotation marks omitted); see also Longbardi v. Astrue, No. 07 Civ. 5952, 2009 WL 50140, at *21 (S.D.N.Y. Jan. 7, 2009); Bonet v. Astrue, No. 05 Civ. 2970, 2008 WL 4058705, at *2 (S.D.N.Y. Aug. 22, 2008). Judicial review, therefore, involves two levels of inquiry. First, the court must decide whether the Commissioner applied the correct legal standard. Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Calvello v. Barnhart, No. 05 Civ. 4254, 2008 WL 4452359, at *8 (S.D.N.Y. April 29, 2008). Second, the court must decide whether the ALJ's decision was supported by substantial evidence. Tejada, 167 F.3d at 773; Calvello, 2008 WL 4452359, at *8.

Substantial evidence in this context is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hahn, 2009 WL 1490775, at *6 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); accord Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson, 402 U.S. at 401). "In determining

13

whether substantial evidence exists, a reviewing court must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Longbardi, 2009 WL 50140, at *21; see also Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999). "If substantial evidence supports the Commissioner's decision, then it must be upheld, even if substantial evidence also supports the contrary result." Ventura v. Barnhart, No. 04 Civ. 9018, 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.")).

Even if the record, as it stands, contains substantial evidence of disability, the Commissioner's decision may not withstand a challenge if the ALJ committed legal error. Ellington v. Astrue, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009). Of particular importance, because a hearing on disability benefits is a non-adversarial proceeding, the ALJ has an affirmative obligation to fully develop the administrative record. Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). The ALJ bears this duty even when the claimant is represented by counsel. Id. Toward this end, the ALJ must make every reasonable effort to help an applicant get medical reports from his medical sources. 20 C.F.R. § 404.1512(d). More

specifically, "[t]he record as a whole must be complete and detailed enough to allow the ALJ to determine the [plaintiff's] residual functional capacity." Casino-Ortiz v. Astrue, No. 06 Civ. 155, 2007 WL 2745704, at *7 (S.D.N.Y. Sept. 21, 2007). Therefore, the ALJ must seek additional evidence or clarification when the "report from [the plaintiff's] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1512(e).[6] In short, if a physician's report is believed to be insufficiently explained, lacking in support, or inconsistent with the physician's other reports, the ALJ must seek clarification and additional information to fill any clear gaps from the physician before dismissing the doctor's opinion. See, e.g., Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information . . . sua sponte.").

In addition, the ALJ must adequately explain his analysis and reasoning in making the findings on which his ultimate decision

---

[6] This regulation was in effect when this claim was adjudicated. Effective March 26, 20 C.F.R. § 404.1512 was amended to, among other things, remove sub-paragraph (e). 77 Fed. Reg. 10651; see Martello v. Astrue, No. 12-CV-2153, 2013 WL 1337311, at *3 n.3 (W.D.N.Y. March 29, 2013).

rests, and must address all pertinent evidence. See, e.g., Ferraris, 728 F.2d at 586-87. "It is self-evident that a determination by the [ALJ] must contain a sufficient explanation of his reasoning to permit the reviewing court to judge the adequacy of his conclusions." Rivera v. Sullivan, 771 F. Supp. 1339, 1354 (S.D.N.Y. 1991). Courts in this Circuit have long held that an ALJ's "failure to acknowledge relevant evidence or explain its implicit rejection is plain error." Pagan v. Chater, 923 F. Supp. 547, 556 (S.D.N.Y. 1996).

   B.   Determination of Disability

   A claimant is disabled under the Act and therefore entitled to disability benefits if he can demonstrate that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also Hahn, 2009 WL 1490775, at *6; Marrero v. Apfel, 87 F. Supp. 2d 340, 345-46 (S.D.N.Y. 2000). The disability must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is entitled to disability benefits, the Commissioner employs a five-step sequential analysis. 20 C.F.R. § 404.1520. First, the claimant must demonstrate that he is not currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i), (b). Next, the claimant must prove that he has a severe impairment that "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); see 20 C.F.R. § 404.1520(a)(4)(ii). Third, if the impairment is listed in 20 C.F.R. § 404, Subpt. P, App. 1 or is the substantial equivalent of a listed impairment, the claimant is automatically considered disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d). If, however, the claimant's impairment is neither listed nor equal to any listed impairment, he must prove that he does not have the residual functional capacity to perform his past work. 20 C.F.R. § 404.1520(a)(4)(iv), (e); Longbardi, 2009 WL 50140, at *23 (quoting Bush v. Shalala, 94 F.3d 40, 44-45 (2d Cir. 1996). Finally, if the claimant satisfies his burden of proof on the first four steps, the burden shifts to the Commissioner to demonstrate that there is alternative substantial gainful employment in the national economy that the claimant can perform. 20 C.F.R. § 404.1520(a)(4)(v), (g); Longbardi, 2009 WL 50140, at *23 (citing Rosa, 168 F.3d at 77, and Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986)).

In assessing whether there is alternative substantial gainful employment, the ALJ must consider the plaintiff's residual functional capacity to perform work other than his past job.  The residual functional capacity "is the most [a claimant] can still do despite [his] limitations" in terms of work-related physical and mental activities.  20 C.F.R. § 404.1545(a)(1).  When determining a claimant's residual functional capacity, the ALJ must consider the totality of the record, giving due weight to every medical opinion, regardless of its source.  20 C.F.R. § 404.1527.  The Commissioner must consider objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and the claimant's educational background, age, and work experience.  Hahn, 2009 WL 1490775, at *7; see also Brown, 174 F.3d at 62.  At each stage of his evaluation, the ALJ must explain his analysis and address all pertinent evidence.  Ferraris, 728 F.2d at 587 ("[T]he crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.").

C.   The ALJ's Decision

The ALJ evaluated the plaintiff's claim pursuant to the five-step sequential evaluation process and concluded that the plaintiff was not disabled within the meaning of the Act between January 6,

2011, and October 1, 2011.[7]  20 C.F.R. §§ 404.1520, 416.920.

At step one, the ALJ found that Mr. Jones had not engaged in substantial gainful activity since January 6, 2010.  (R. at 11).  At step two, he determined that Mr. Jones had severe impairments consisting of diabetes mellitus, high blood pressure, left shoulder tear, depression, and sleep apnea.  (R. at 11).  However, the ALJ determined at step three that none of Mr. Jones' impairments, nor any combination of those impairments, was of a severity to meet or medically equal one of the listed impairments in Appendix 1 of the regulations.  (R. at 12).

At step four, the ALJ determined that Mr. Jones had the residual functional capacity to perform "light work" as defined in the regulation, limited to "low stress work."  (R. at 12).  In reaching this conclusion, the ALJ considered the plaintiff's reported symptoms and found his testimony "not credible" to the extent it was inconsistent with this evaluation of his residual functional capacity.  (R. at 13).  The ALJ also considered medical evidence, including opinions of several doctors.  He assigned significant weight to the opinion of Dr. Rodriguez as the claimant's treating psychiatrist, significant weight to the

---

[7] The ALJ applied an older age category starting October 1, 2011, to find that the plaintiff was "disabled" as of that date. (R. at 17).

opinion of Dr. Akresh, some weight to the opinions of Mr. Alabi, Dr. Revan, and Dr. Inman-Dundon, and no weight to the opinion of Dr. Meadow.  (R. at 15).  Based on Mr. Jones' residual functional capacity, the ALJ concluded that the claimant had been unable to perform any past relevant work.  (R. at 15).

Finally, at step five, based on his review of the entire record, and in particular, the testimony of Ms. Simone, the ALJ determined that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed," such as mail clerks and housekeepers.  (R. at 16).

The plaintiff challenges the ALJ's decision on the grounds that (1) the ALJ failed to fully credit the treating sources, and (2) the ALJ's determination of the plaintiff's residual functional capacity was not supported by substantial evidence.[8]

---

[8] The plaintiff also appears to challenge the ALJ's use of the grids.  "In the ordinary case," the Commissioner meets his burden at the fifth step "by resorting to the applicable medical vocational guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)."  Bapp, 802 F.2d at 604.  The grids "take[] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience."  Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y. 1996).  Based on these considerations, the grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy.  However, the grids are inapplicable in cases where, as here, the claimant exhibits a significant non-exertional impairment.  Rosa, 168 F.3d at 82; 20 C.F.R. § 404.1569a(c)(2).  Further, the ALJ only applied the grids for the period after October 1, 2011, as to which he ruled in favor of the plaintiff.  Therefore, I need not address the plaintiff's argument regarding the grids.

D.   <u>Treating Physician Rule</u>

Mr. Jones argues that the ALJ erred by failing to credit the opinion of his treating physician, Dr. Rodriguez.   Specifically, Mr. Jones contends that the ALJ did not credit Dr. Rodriguez's determination that Mr. Jones was unemployable for at least 12 months and failed to provide adequate reasons for disregarding this opinion.   (Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion for Judgment on the Pleadings ("Pl. Memo.") at 3).

A treating physician's evaluation is to be given more weight than other reports and will be controlling if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."   20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).   If the ALJ determines that a treating physician's opinion is not controlling, he is nevertheless required to consider other factors in determining the weight to be given to that opinion. 20 C.F.R. § 404.1527(c)(2).   Specifically, the ALJ must consider (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the relationship; (3) the evidence provided to support the treating physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist;

21

and (6) other factors brought to the Commissioner's attention that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6); see Halloran, 362 F.3d at 32. The ALJ must give "good reasons" for determining the weight given to the treating physician's opinion, 20 C.F.R. § 404.1527(c)(2), and failure to do so may result in remand of the case, see Halloran, 362 F.3d at 33; Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).

Determination of "dispositive" issues, such as whether a claimant "meet[s] the statutory definition of disability" and cannot work, are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(c)(1), 416.927(d)(1); see Snell, 177 F.3d at 133. Thus, the Social Security Administration considers the data and opinion of the treating physicians but draws its own conclusions as to whether the claimant is disabled. A treating physician's statement that the plaintiff was unemployable cannot itself be determinative. See Snell, 177 F.3d at 133.

Here, in concluding that Mr. Jones could perform light work, the ALJ declined to give controlling weight to Dr. Rodriguez's conclusion as to the plaintiff's ability to work. However, it is unclear which sources the ALJ relied on in reaching this determination. "Reserving the ultimate issue of disability to the Commissioner relieves the Social Security Administration of having to credit a doctor's finding of disability, but it does not exempt

22

administrative decisionmakers from their obligation . . . to explain why a treating physician's opinions are not being credited." <u>Snell</u>, 177 F.3d at 134.

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, even —- and perhaps especially -— when those dispositions are unfavorable. A claimant like [Mr. Jones], who knows that [his] physician has deemed [him] disabled, might be especially bewildered when told by an administrative bureaucracy that []he is not, unless some reason for the agency's decision is supplied.   [Mr. Jones] is not entitled to have [his physician]'s opinion on the ultimate question of disability be treated as controlling, but []he is entitled to be told why the Commissioner has decided —- as under appropriate circumstances is his right —- to disagree with [the treating physician].

<u>Id.</u> (internal citation omitted)(remanding case to Appeals Council for statement of reasons on basis of which treating physician's finding of disability was rejected).

The ALJ acknowledged the assessment of Dr. Rodriguez, which found that the plaintiff was unemployable for six to nine months due to depression as of February 24, 2011, and unemployable for at least 12 months as of May 19, 2011.  The ALJ stated that he "assigns significant weight to the opinion of Dr. Rodriguez as the claimant's treating psychiatrist to the extent it is consistent with the findings contained herein." (R. at 15).  However, the ALJ never offered a reason for reaching a different conclusion from that of Dr. Rodriguez.

On appeal, the Commissioner cited the opinion of Dr. Inman-Dundon, who examined the record and assessed the plaintiff's

functional ability.  Dr. Inman-Dundon opined that the plaintiff could perform simple or semi-skilled work in a low contact setting. (R. at 404).  This may be a good reason for a decision by the ALJ not to give controlling weight to Dr. Rodriguez's findings.  But the ALJ did not in fact offer that reason.  See <u>Snell</u>, 177 F.3d at 134 (remanding because Appeals Council did not offer reason for discounting treating physicians' finding of plaintiff's disability).

Therefore, the ALJ failed in his duty to explain to the plaintiff why the opinion of Dr. Rodriguez was not afforded controlling weight, in violation of the applicable regulation.  20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

E.   <u>Residual Functional Capacity</u>

The plaintiff also contends that the ALJ erred in determining the plaintiff's residual capacity.  The Social Security regulations define residual functional capacity as the most the claimant can still do in a work setting despite the limitations imposed by his impairments.  20 C.F.R. § 404.1545.  In assessing the residual functional capacity of a claimant with multiple impairments, the ALJ must consider "all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3).

     1.  <u>Exertional Ability</u>

The ALJ determined that the plaintiff had residual functional capacity for "light work" that did not require climbing ladders, ropes, or scaffolds, or more than occasional climbing ramps or stairs, or more than occasional stooping, kneeling, crouching, or crawling, or more than frequent pushing, pulling, or reaching with the left upper extremity.   (R. at 12).   In reaching this conclusion, the ALJ relied on medical records and reports by various doctors who examined Mr. Jones or reviewed the medical records.  (R. at 13-15).  Under the applicable regulation, "light work" requires the ability to lift 20 pounds occasionally and 10 pounds frequently, and a good deal of standing, sitting, and walking.  20 C.F.R. § 404.1567(b).

It is unclear how the ALJ came to his conclusion regarding the plaintiff's ability to lift.   His residual functional capacity assessment fails to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  <u>Policy Interpretation Ruling Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims</u>, SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996).  Thus, the ALJ failed to fulfill his duty to explain.  <u>See</u> <u>Carrube v. Astrue</u>, No. 3:08-CV-0830, 2009 WL 6527504, at *8-9 (N.D.N.Y. Dec. 2, 2009) (remanding because ALJ failed to explain what evidence supports

conclusion that plaintiff can lift and carry 25 pounds frequently and 50 pounds occasionally); see also Hogan v. Astrue, 491 F. Supp. 2d 347, 354 (W.D.N.Y. 2007).

Further, a review of the medical evidence during the relevant period -- January 6, 2011, to September 30, 2011 -- only reveals the statements of Dr. Akresh regarding the plaintiff's ability to lift. His report states, "There are moderate limitations in [the plaintiff's] ability to lift and carry heavy objects secondary to his chronic low back pain and history of cervical spine disease." (R. at 383). Dr. Akresh does not explain "moderate limitations" or "heavy objects," leaving the ALJ to speculate as to whether the plaintiff can lift twenty pounds occasionally and ten pounds frequently. See Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013) (remanding case because physician's opinion that claimant "should be able to lift . . . objects of a mild degree of weight on an intermittent basis" is too vague and provide little support for claimant's ability to lift weight)(alteration in original) (internal quotation marks omitted).   To the extent that Dr. Akresh's report was ambiguous, it was the ALJ's duty to seek additional evidence or clarification.   20 C.F.R. § 404.1512(e).

Likewise, the ALJ did not explain how he concluded that the plaintiff could stand, sit, and walk up to six hours in an eight-hour work day.   A review of the record does not appear to contain

substantial evidence to support this conclusion.[9]

      2.   <u>Mental Capacity</u>

The ALJ determined that the plaintiff had residual functional capacity for low stress work with simple, routine, repetitive tasks, and only occasional interaction with the public and co-workers. As discussed above, the ALJ failed to explain how he came to this conclusion in light of Dr. Rodriguez's conclusion to the contrary.[10]

---

[9] The plaintiff also contends that the ALJ wrongly relied on the testimony of the vocational expert. Ms. Simone testified that someone with the plaintiff's limitations could nonetheless work as a mail clerk or housekeeper, and that those jobs were available in significant number in the national economy. (R. at 16). However, this testimony was based on the ALJ's hypothetical, which presumed that the plaintiff could perform "light work" in "low-stress" environment. As discussed, these presumptions were not based on substantial evidence. Thus, Ms. Simone's testimony is not entitled to any weight without a showing that the ALJ's findings as to the plaintiff's residual functional capacity were based on substantial evidence.

[10] The plaintiff argues that the ALJ ignored the psychiatric assessment completed by Dr. Luis Gonzalez. Dr. Gonzalez's assessment, completed in February 2012, was based on a monthly course of psychiatric treatment and a weekly course of therapy commencing a year earlier. The assessment stated that the plaintiff had an ability of "poor/none" in the following areas: follow work rules, relate to co-workers, use judgment, interact with supervisors, deal with work stresses, function independently, maintain attention concentration, behave in an emotionally stable manner, and demonstrate reliability. (R. at 537-38). However, Dr. Gonzalez's report was not presented before the ALJ at the hearing. Rather, it was submitted to the Appeals Council, and the Commissioner has included the report as part of the administrative record in the Answer. (R. at 535-39). Thus, the Commissioner's final decision "necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." <u>Perez</u>, 77 F.3d at 45 (internal quotation marks omitted). Therefore, it is appropriate to consider Dr. Gonzalez's

F.     Remedy

Mr. Jones requests judgment on the pleadings.  However, he has not shown that he is entitled to benefits based on the record below.  See Williams v. Apfel, 204 F.3d 48, 50 (2d Cir. 2000) (holding that award of benefits is appropriate only where record "provide[s] persuasive evidence of total disability that [would render] any further proceedings pointless"); see also Selian, 708 F.3d at 420.  There is no such record of total disability for the period in dispute.  Dr. Rodriguez's opinion as to the ultimate issue of disability is not dispositive, and the Commissioner may reach such a contrary determination if the decision is supported by substantial evidence.

Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision denying disability benefits for the period between January 6, 2011, and September 30, 2011, be remanded for further proceedings in accordance with this report and recommendation. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to

report submitted after the hearing.  See id.; see also Brown, 174 F.3d at 62.  Nevertheless, because I recommend that the decision of the Commissioner be vacated and case be remanded, I need not address the Appeals Council's failure to consider Dr. Gonzalez's report.  On remand, the Commissioner shall consider Dr. Gonzalez's report as part of the administrative record.

this Report and Recommendation.  Such objections shall be filed
with the Clerk of the Court, with extra copies delivered to the
chambers of the Honorable Paul J. Oetken, Room 2101, 40 Foley
Square, New York, New York 10007, and to the chambers of the
undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.
Failure to file timely objections will preclude appellate review.

Respectfully Submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       April 30, 2013

Copies mailed this date to:

Daniel Berger, Esq.
Law Office of Daniel Berger
1000 Grand Concourse
Suite 1A
Bronx, NY 10451

Susan D. Baird, Esq.
Assistant United States Attorney
86 Chambers Street, 3d Floor
New York, NY 10007